State v. Bowden

STATE OF NORTH CAROLINA v. BENNIE BOWDEN

No. 788SC196

(Filed 11 July 1978)

1. **Criminal Law § 101— witness's contact with jurors—no prejudice from judge's actions**

    Defendant was not prejudiced where two jurors were seen talking to a defense witness during the noon recess; after talking to the two jurors in chambers concerning their contact with the witness, the trial judge attempted to explain to the other jurors why he had called the two into his chambers; and the court thoroughly examined the jurors to determine that their finding of guilt or innocence would not be affected by the occurrence.

2. **Receiving Stolen Goods § 6— reasonable grounds to believe goods stolen—instructions proper**

    The trial court did not err in instructing the jury to return a verdict of guilty if defendant, at the time of receiving the stolen goods, knew or had reasonable grounds to believe the goods had been stolen, since the 1975 amendment to G.S. 14-71, the statute upon which defendant was charged, makes it a crime to receive stolen goods which defendant has "reasonable grounds to believe" were feloniously stolen or taken.

APPEAL by defendant from *James, Judge*. Judgment entered 29 June 1977, in Superior Court, GREENE County. Heard in the Court of Appeals 21 June 1978.

Defendant was indicted for the felonious receipt of stolen goods, G.S. 14-71. From his conviction, and a prison sentence of six to eight years, he appeals.

*Attorney General Edmisten, by Associate Attorney Robert L. Hillman, for the State.*

*Fred W. Harrison for defendant appellant.*

ARNOLD, Judge.

[1] During a noon recess in the trial of this case, two jurors were seen talking to a defense witness. After talking to the two jurors in chambers, the trial judge attempted to explain to the other jurors why he had called the two into his chambers. We do not agree with defendant's contention that the trial court's remarks poisoned the minds of the jury against defendant in violation of G.S. 1-180, and that the trial court erred in denying

defendant's motion for a mistrial. The record discloses that the following occurred in the presence of the jury:

"COURT: Ladies and Gentlemen, we are somewhat disturbed by a report that came to the Court that during the lunch hour sometime a man by the name of Streeter was seen talking with you two ladies and he happens to be a person who was first supposed to be a witness for the defendant and came over to Snow Hill today with the defendant and perhaps with Johnnie Boykin.

"Do either of you ladies know—your name is . . .

"(THE JURORS IDENTIFY THEMSELVES AS MRS. BARFIELD AND MRS. ARTIS.)

"COURT: Did he talk with you during the lunch hour?

"JUROR: Yes, he was down there. We were not talking anything concerning the court or anything. That is the first time I have seen him when he was in court. I don't know anything about him.

"COURT: Are you previously acquainted with him?

"JUROR: No, I don't know him. He knows my brother. He asked me about my brother.

"COURT: Nothing was said about the case at all?

"JUROR: No, sir.

"COURT: The reason, as I have said, he was asked or subpoenaed to be here as a witness for the defendant and the fact he was seen talking to you two ladies and later seen in conversation with the defendant and Mr. Boykin gave the appearance of something improper. You can understand that because of course, I cautioned all of you to be very careful not to talk with anyone or permit anyone to talk to you about the case. That did not mean, of course, you could not say a word to anybody about anything, but it simply meant you were not to discuss the case with anyone, and really not talk with anyone directly connected with the case about anything."

Thereafter, out of the presence of the jury, defense counsel made known his objection to the trial court's explanation. This objection prompted the trial judge to make the following statements to the full jury:

"COURT: Ladies and gentlemen, out of an abundance of caution I wish to say this. It is possible that calling you in a few minutes ago and telling you about the fact that a person was seen talking to Mrs. Artis and Mrs. Barfield and telling you that he was later seen talking to the defendant and others may possibly have affected some of you or created some suspicion in your mind that might affect your judgment when you come to deliberate upon a verdict in this case. The person who reported it to the court was the State Bureau of Investigation agent, Mr. Thompson. So I wish to inquire of each and every one of you — would you be able to go back and when this case is submitted to you to enter upon your deliberations in accordance with the instructions I later will give you and arrive at a decision of guilt or innocence based wholly upon the evidence and the law as I shall give it to you, without being in any way affected either for or against the defendant by reason of this occurrence?

"Could you do that, lady?

"JUROR: Yes.

"COURT: And you?

"(THE COURT ASKED EACH JUROR THIS QUESTION AND EACH JUROR ANSWERED YES.)

"COURT: Let the record show that each of the jurors indicated affirmatively that he or she could deliberate and arrive at a verdict without being affected in any way by the occurrence which has been mentioned. . . .

"Now, I want to say that if there is the slightest degree of feeling on the part of any of you that you might be affected by this, it is your duty to disclose it. There would not be anything improper about it on your part but if you had such a feeling and did not disclose it, it is possible that it might work an unfairness to either the defendant or to the state. So, please consider it carefully and if any of you has

any feeling there is any possibility that it would, let me know it now.

"Am I to understand by your silence that no one feels in the slightest degree that your deliberations and the verdict which you might arrive at would be in any way affected by this matter? Am I correct in my assumption?

"(ALL JURORS NOD THEIR HEADS).

"COURT: Let the record show all jurors nodded. All right, thank you."

We deem the trial court's handling of this matter to have been proper and without prejudice to defendant. Assuming, against our belief, that the statement by the trial court linking defendant with the man who spoke to the two jurors was error, we believe that the trial court took adequate precautions to assure that there was no prejudicial effect on any juror. The remarks of the trial court during trial do not entitle defendant to a new trial unless, when considered in light of the circumstances under which they were made, they tended to prejudice the defendant. *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974). The defendant, who has the burden of showing prejudice, *id.*, has failed to carry that burden.

[2] Defendant's second argument, that the court erred in instructing the jury to return a verdict of guilty if defendant, at the time of receiving the stolen goods, knew or had reasonable grounds to believe the goods had been stolen, is also without merit. The cases defendant relies on, *State v. Miller*, 212 N.C. 361, 193 S.E. 388 (1937); *State v. Hobbs*, 26 N.C. App. 588, 217 S.E. 2d 7 (1975); and *State v. St. Clair*, 17 N.C. App. 22, 193 S.E. 2d 404 (1972), were all decided before the effective date of the 1975 amendment of G.S. 14-71. Prior to that amendment, G.S. 14-71 made it a crime to receive goods that were *known* to be stolen. Hence, jury instructions allowing convictions for mere *belief* that the goods were stolen fell short of requiring the State to satisfy the jury beyond a reasonable doubt of all the elements of the statutory crime prior to the amendment. *State v. Hobbs, supra.*

The 1975 amendment to G.S. 14-71, however, makes it a crime to receive stolen goods which defendant has "reasonable grounds to believe" were feloniously stolen or taken:

"If any person shall receive any chattel, property, money, valuable security or other thing whatsoever, the stealing or taking whereof amounts to larceny or a felony, either at common law or by virtue of any statute made or hereafter to be made, such person *knowing or having reasonable grounds to believe* the same to have been feloniously stolen or taken, he shall be guilty of a criminal offense, and may be indicted and convicted . . . ." [Emphasis added.]

The trial court's instructions to the jury, therefore, properly outlined the elements of the statutory offense.

In defendant's trial, we find

No error.

Judges BRITT and ERWIN concur.