Trespass vi et armis, in which the jury below found a verdict for the plaintiff, subject to the opinion of the court on a point reserved, which is as follows.
This was an action to recover damages of the defendant for the burning a tavern house and the furniture therein, privately in the night, which belonged to the plaintiff, which stood a short distance from the house in which plaintiff and his wife lodged. Doctor Smith, who lived with the plaintiff, slept in the tavern house; and it was the building in which travelers slept who tarried with the plaintiff. The (252) plaintiff had preferred to the grand jury a bill of indictment against the defendant for arson in burning the house, which was returned "Not a true bill." No other proceedings criminaliter were had upon the charge, and the plaintiff brought this action. The point reserved is whether it be not necessary to the maintenance of this action that the defendant be either convicted or acquited [acquitted] by a trial before a petit jury? Whereupon, by the court, Daniel, J., it is considered that it is necessary to the maintenance of this action that the defendant be either convicted or acquitted by a trial before a petit jury on an indictment for felony; and, therefore, judgment was rendered for the defendant, and plaintiff appealed.
The two objections taken to the plaintiff's recovery are that the civil trespass is merged in the felony, a prosecution for which ought first to have been regularly had to the conviction or acquittal of the defendant; and that the rejection of the bill by the grand jury is not a sufficient compliance with the law to enable the plaintiff to maintain the action.
It is difficult to ascertain with precision the source whence the doctrine of merger was derived. As it exists only in those cases where forfeiture is the consequence of attainder or conviction, a presumption is furnished that the primary object was to cause persons to prosecute crimes, and thereby to increase the resources of the crown; on the other hand, as forfeitures were annexed only to the higher crimes, treason and felony, the suppression of which was most essential to the peace and welfare of society, the civil remedy may have been suspended in order to prompt the injured to (263) bring offenders to justice; not to increase the treasure of the sovereign, but to guard society against the effects of these more aggravated and, in early ages, more frequent offenses. Many offenses below the grade of felony are now more dangerous to society than many felonies; and when it is inquired why the civil remedy is not suspended in them, until the offender is brought to trial criminally, the answer is, such offenses have grown out of the artificial state of society, and were unknown to the rude simplicity of its early condition. In that, robbery and rapine were the crimes to be punished; in its more advanced stages, artifice and fraud.
Whatever may have been the origin of the rule, there are ample proofs scattered through the books of its having been a fixed rule of the common law before the period of our revolution; and that in cases of conviction trover or trespass would lie against the wrongdoer. The principle of the action is referred to the policy of effecting the punishment of felons, and preventing the injured party from compounding them. Lofft., 90. There aredicta, but no adjudged case, countenancing a suit after acquittal until that cited from 12 East. What is said in that case is so strong, and to my mind unanswerable, as to conclude the question: "All the cases which show that an action lies after the conviction of the defendant for the felony apply strongly in support of it after acquittal; for it is a stronger case to permit the party injured to proceed upon his civil remedy to recover damages after a conviction of the offender when the law has, by means of the forfeiture of his property consequent upon a conviction, taken away from him the means of satisfying the damages. Besides, when a defendant, after an acquittal of the felony, is called upon to make recompense in civil damages to the party grieved, it would be stranger *Page 140 
for him to be permitted to allege that he was not properly (264) acquitted than in the case it would be to allege that he had not been properly convicted. And here the defendant cannot say, against the record of acquittal, that this was a felony."
If this suspension of the remedy was the consequence of forfeiture alone, I should hold that it had no existence here; but I cannot satisfy myself that it is so. On the contrary, it appears to me to be one among the many inducements held out by the general policy of the criminal law for persons to prosecute. The rewards and immunities given to persons who bring offenders to justice, as well in cases where there is no forfeiture as where there is, afford abundant proofs of this policy. I cannot think that forfeiture has had any force in this State since 1778, when it was declared what part of the common law should be in force here. It is not probable that a prerogative should be designedly introduced which a most devoted, but at the same time an enlightened, supporter of the throne pronounced an "odious one." Lofft., 90. It was introduced originally to increase the king's ordinary revenue, a branch of which it constituted; and if such means of increasing the revenues of the State rightfully existed, it would not have been overlooked by the succession of able men who have filled the office of Attorney-General at different periods. Yet, with the exception of the confiscations and attainders during the war, not a single instance has occurred in the memory of any one wherein a forfeiture has been exacted. Yet some unfortunate persons have fallen victims to the law, leaving wealth which is now enjoyed by their posterity. I lay no stress on the two acts which have been passed, suggested, no doubt, by the fears of relations and creditors, and obtained from abundant caution. They ought not to be considered as legislative declarations that forfeitures existed, for every one knows how little interest is taken in private acts generally.
As to the manner in which the injured party shall prosecute, (265) it is in vain to search the books, because instances of suit after acquittal have only recently occurred. All that good sense and reason seem to require is that the matter should be first heard and disposed of before a criminal tribunal. If the party prefer an accusation in good faith, although the bill should be rejected by the grand jury, he has done as much as he can do towards prosecuting, and has satisfied the policy of the rule. In England he might have his appeal, but here he can do nothing more than has been done in this case. I think the plaintiff is entitled to judgment.