COMMISSIONERS OF CLEAVELAND COUNTY *v.* ATLANTA AND CHARLOTTE AIR LINE RAILWAY COMPANY.

*Taxation— County Commissioners, power of to increase valuation.*

In revising the tax-lists the commissioners of a county *ex mero motu*, at their August meeting, increased the valuation put upon the property of a railroad company, and then caused notice to be served upon the company to appear at their September meeting and show cause why the same should not be fixed at the increased sum ; *Held* that the notice was sufficient and the action of the board warranted in law. (The method of proceeding in such cases under sections 18 and 31 of the revenue act of 1881, pointed out by SMITH, C. J).

PROCEEDING heard at Fall Term, 1881, of CLEAVELAND Superior Court, before *Avery, J.*

The board of county commissioners of Cleaveland, at the session held on the 2nd Monday in August, 1881, in revising the tax lists and valuation reported to them by the list takers, of their own motion and upon their own previous information and knowledge, without the aid of the testimony of witnesses and in the absence of notice to the defendant company of their intended action, came to the conclusion that the road-bed of the company lying in their county was undervalued on the list at the rate of $3,000 per mile, and should be increased to double that sum. The change was accordingly entered, and the commissioners ordered that notice issue to the company to appear at their next meeting on the 1st Monday in September, and show cause why the valuation should not be fixed at the proposed rate of $6,000 dollars for each mile of the track. Notice was given, according to the direction of the commissioners, to the company, and it appeared before them, at the time designated, by its counsel and moved to strike out the increased valuation, and restore it to the original amount, not because the estimate was unequal or excessive, or upon any proof adduced of either, but upon the following assigned grounds:

1. The company was entitled to notice, and received none, before the August session, of the proposed change in the valuation of the property.

2. The action of the commissioners at that time, *ex mero motu* and without evidence, was arbitrary and not warranted by law.

3. The supervisory power conferred upon the commissioners to examine and revise the returned tax-lists, could only be called into exercise in such case upon the application of the list-taker, upon ten days' previous notice to the

owner, and then only on proof of an advance in value of twenty-five per centum or more since the last assessment.

Upon the hearing, the commissioners decided to adhere to their former estimate and fix the valuation at the proposed rate, but on being asked for further time for argument on behalf of the company deferred a final determination of the matter until their meeting in October, and directed notice thereof to issue to the counsel on whose behalf the postponement was asked. At this session the company was represented by other counsel who . were heard, and upon consideration the commissioners declined to modify their former decision, and adjudged that the increased valuation should stand. From this the company appealed to the superior court, and from the ruling of the judge affirming the action of the commissioners, to this court.

*Messrs. Hoke & Hoke* and *Battle & Mordecai* for plaintiffs.
*Messrs. D. Schenck* and *F. H. Busbee*, for defendant.

SMITH, C. J., after stating the case. The argument before us is expanded to some extent beyond the scope of the exceptions appearing in the record, and proceeds entirely upon alleged irregularities in the action of the commissioners in deviating from the provisions of the 18th and 31st sections of the revenue act of 1881, ch. 137.

Those sections so far as pertinent to the present inquiry are in these words:

§ 18. The board of commissioners of each county, after notice in one newspaper, or by posters put up, shall meet on the second Monday in August, and revise the tax-lists and valuation reported to them, and complete the list by computing the tax payable by each person and affixing the same opposite his name. They shall sit for one day at

least, and when necessary, shall sit until the revision is complete, and shall hear all persons objecting to the valuation of their property, or to the amount of tax charged against them. They shall have power to summon and examine witnesses, and shall correct the lists of the list-takers, as may be right and just, and so that the valuation of similar property throughout the county shall be as near uniform as possible. They shall have power, after notifying the owner or agent, to raise the valuation upon such property as they shall deem unreasonably low.

§ 31. If any real or personal property has been, or after listing shall be destroyed or depreciated 25 per centum on its assessed value, otherwise than by the act of the owner, the party charged with the tax on such property may apply to the board of commissioners on or before the 1st Monday in September in each year, and upon proper proof may have the valuation reduced, and the commissioners shall make the proper order in relation thereto. In like manner if property shall have increased 25 per centum over the sum at which it has heretofore been assessed, the list taker, upon ten days notice to the owner, may apply to the board of commissioners to alter the valuation of the property, and upon proper proof they shall do so.

We reproduce these sections because upon their construction the validity of the proceedings of the commissioners in increasing the valuation of the property, and of the objections made thereto, entirely depend.

The notice required before the meeting in August is general, and has reference to a general revision of the lists of the whole county, with a view to an equal and uniform assessment among the several townships, and it is to give opportunity to all who may be dissatisfied with the valuation of their property to make complaint and have it corrected. This sitting must be protracted until the work is

completed. But authority is expressly conferred " to raise the valuation upon such property as they shall deem unreasonably low," and of this proposed increase special notice must be given to the owner or agent.

As the commissioners do not meet after the lists are delivered to their clerk (§ 16) before the 2d Monday in August, and then can only make the examination and ascertain that any property has been valued unreasonably low, it is obvious that in order to the giving notice, they must do so at a future day, when the owner can be present and be heard before the matter can be determined. Nor can any reason be suggested why it should be earlier than the regular meeting in September. The commissioners have complied with the requirements of the act.

It is true the power to summon witnesses is given in aid of their personal knowledge and information, but this is not an imperative duty, for it may not be necessary; and besides, when the company appeared before the commissioners in September, no objection whatever was made to the proposed increase, as being excessive, and no witness was offered to prove the fact, but resistance was offered on the ground that the change must be made at the August meeting, prolonged if necessary for that purpose, and therefore it was now too late to make it, and that what was then done without evidence and in the absence of the company or any one to represent it, was unauthorized and null.

The action of the commissioners in August was but preliminary and in no manner prejudicial to the company, for the matter, as *res integra*, came up for consideration and adjudication in September as if no previous conclusion had been reached. Indeed the reasonable interpretation of this action is that the commissioners then *deemed*, (and this opinion is put in the form of an entry upon the tax list) that the road-bed was estimated, " *unreasonably low* " and should be rated at the higher sum. But the question re-

35

mained open and the company had opportunity to be heard, and was heard before the opinion of the commissioners passed into a judgment and became final. If the action in August were premature and wrong, the actual adjudication in September and October is not the less efficacious and valid on that account.

The other section (31) is intended to provide generally for the correction of valuations when a change has occurred after listing, either by destruction or depreciation from other causes, or by appreciation from improvement or by other means, at the instance of the tax-payer or list-taker respectively, but is not intended to interfere with the supervision to be exercised by the commissioners in adjusting and correcting valuations as to them may seem "right and just," at their meeting in August for this special duty. It has no application therefore to the present case.

There is therefore no error. Let this be certified.

No error.              Affirmed.