STATE v. EDGAR WILLIS.

(Filed 11 October, 1961.)

1. Criminal Law § 3—

   An attempt to do an act cannot be an offense unless the actual commission of the act would be an offense.

2. Common Law—

   The common law of England is in force in this State to the extent it is not destructive of, repugnant to, or inconsistent with our form of government and to the extent it has not been abrogated or repealed by statute or has become obsolete. G.S. 4-1.

**3. Suicide § 1—**

The common law offense of suicide obtains in this State notwithstanding that the common law punishment for the offense is precluded by our constitution, Article XI, § 1, and therefore an attempt to commit suicide is an indictable misdemeanor in this State. G.S. 14-3.

**4. Suicide § 2; Criminal Law § 5—**

Insanity is a defense to a charge of attempted suicide as it is to any other crime, but the test of mental responsibility is the capacity to distinguish between right and wrong at the time and in respect to the matter under investigation.

APPEAL by the State of North Carolina from *Cowper, J.,* April 1961 Term of CARTERET.

This is a criminal action.

The bill of indictment charges that defendant on 13 February 1961 "unlawfully and feloniously did attempt to commit suicide by slashing and cutting his throat and by hanging himself by the neck from a barn rafter, which acts failed to cause death . . . "

Defendant moved to quash the bill on the ground that "it failed to state a crime." The court sustained the motion and quashed the indictment.

The State excepted and appealed.

*Attorney General Bruton and Assistant Attorney General Moody for the State, appellant.*

*C. R. Wheatly, Jr. and Thomas S. Bennett for defendant, appellee.*

MOORE, J. Is an attempt to commit suicide a crime in North Carolina? This necessarily raises the further question: Is suicide a crime in this jurisdiction? "To constitute a criminal attempt, it is necessary that the act which is attempted be a crime." 1 Wharton's Criminal Law and Procedure (1957), s. 72, p. 155.

" 'It is manifest,' said the General Assembly of North Carolina in 1715, 'that the laws of England are the laws of this Government, so far as they are compatible with our way of living and trade.' " 17 N.C. Law Review, 205. At all times since 1715 the common law has, within certain limits, been recognized as the law of this jurisdiction. The General Assembly has declared that "All such parts of the common law as were heretofore in force and use within this State, or so much of the common law as is not destructive of, or repugnant to, or inconsistent with, the freedom and independence of this State and the form of government therein established, and which has not been otherwise provided for in whole or in part, not abrogated, repealed, or become obsolete, are hereby declared to be in full force within this State."

G.S. 4-1. The term "common law" refers to the common law of England.

At common law suicide was a felony. Blackstone explains the matter thus:

"Felonious homicide is . . . the killing of a human creature, of any age or sex, without justification or excuse. . . . This may de done either by killing one's self, or another man.

". . . (T)he law of England wisely and religiously considers, that no man hath a power to destroy life, but by commission from God, the author of it: and, as the suicide is guilty of a double offence; one spiritual, in invading the prerogative of the Almighty, and rushing into his immediate presence uncalled for; the other temporal, against the king, who hath an interest in the preservation of all his subjects; the law has therefore ranked this among the highest crimes, making it a peculiar species of felony, a felony committed on one's self. . . . A *felo de se* therefore is he that deliberately puts an end to his own existence, or commits any unlawful malicious act, the consequence of which is his own death . . . The party must be of years of discretion, and in his senses, else it is no crime.

"But now the question follows, what punishment can human laws inflict on one who has withdrawn himself from their reach? They can only act upon what he has left behind him, his reputation and fortune: on the former, by an ignominious burial in the highway, with a stake driven through his body; on the latter, by a forfeiture of all his goods and chattels to the king: hoping that his care for either his reputation, or the welfare of his family, would be some motive to restrain him from so desperate and wicked an act." Chitty's Blackstone, 19th London Ed., Book IV, pp. 189, 190. See also: 10 Halsbury's Laws of England, 3d Ed., s. 1395, p. 727; *Hales v. Petit,* 1 Plowden 253, 75 Eng. Rep. 387 (1562) ; 1 East P. C. 219 (1803) ; 1 Hale P. C., c. XXXI, pp. 411-418; 3 Holdsworth's History of English Law, p. 315 (1923).

In 1824 by 4 Geo. IV, c. 52, s. 1, burial of suicides in the highway with stake driven through the body was forbidden in England, and it was provided that burial should be in churchyards or other usual burial places, but without religious ceremony and between 9:00 and 12:00 o'clock at night.

The matter of punishment seems to give the courts, in states where the common law is recognized, the greatest difficulty in deciding whether or not suicide is a crime. Nearly all agree that suicide is *malum in se.* In New York suicide was recognized as "a grave public wrong," but was not considered a crime. *Hundert v. Commercial Travelers' Mut. Acc. Ass'n of America,* 279 N.Y.S. 555 (1935). The Illinois court recognized that suicide was a felony at common law, but

stated that it "had never regarded the English laws as to suicide as applicable to the spirit of our (their) institutions." *Burnett v. State,* 68 N.E. 505, 510 (1903). In Alabama, Massachusetts, New Jersey and South Carolina it has been held that suicide is *malum in se* and a crime, though not punishable if self-murder is accomplished. *Southern Life & Health Ins. Co. v. Wynn,* 194 So. 421 (Ala. 1940); *Commonwealth v. Mink,* 123 Mass. 422 (1877); *State v. Carney,* 55 A. 44 (N.J. 1903); *State v. Levelle,* 13 S.E. 319 (S.C. 1891). Several states, including Iowa, Indiana and Texas, have no common law crimes. *State v. Campbell,* 251 N.W. 717, 92 A.L.R. 1176 (Iowa 1933); *Prudential Ins. Co. of America v. Rice,* 52 N.E. 2d 624 (Ind. 1944); *Grace v. State,* 69 S.W. 529 (Tex. 1902).

"By the English common law suicide was a felony. As, however, forfeitures are not allowed in the United States, and as the common-law punishment of forfeiture is the only punishment that would be available, the offense in the United States is not punishable; yet it may be said that generally in the states of the Union suicide is criminal and is recognized as such whenever the question has a bearing collaterally." 24 A & E Encyclopedia of Law, Suicide, s. II, pp. 490, 491.

Our Constitution and statutes have repealed and abrogated the common law as to suicide only as to punishment and possibly the quality of the offense. Suicide has perhaps been reduced to the grade of misdemeanor by reason of the following statutory provision: "A felony is a crime which is or may be punishable by either death or imprisonment in the State's prison. Any other crime is a misdemeanor." G.S. 14-1. See also *Commonwealth v. Mink, supra.* Our Constitution forbids both ignominious burial and forfeiture of estates as punishment for crime. "The following punishment *only* may be known to the laws of this State, *viz:* death, imprisonment with or without hard labor, fines, removal from office, and disqualification to hold and enjoy any office of honor, trust, or profit under this State." (Emphasis added). N. C. Constitution, Art. XI, s. 1. Forfeiture, as punishment, has not had any force in this jurisdiction since 1778 when it was declared what part of the common law should be in force here. *White v. Fort,* 10 N.C. 251, 264.

So it must be conceded that suicide may not be punished in North Carolina. But in our opinion this fact does not change the criminal character of the act. The common law considered the offense to have been committed in the lifetime of the offender. It is explained thus: ". . . it is observable, that this forfeiture has relation to the time of the act done in the felon's lifetime, which was the cause of his death. As if husband and wife be possessed jointly of a term of years in land,

and the husband drowns himself *(Hales v. Petit, supra);* the land shall be forfeited to the king, and the wife shall not have it by survivorship. For by the act of casting himself into the water he forfeits the term; which gives a title to the king, prior to the wife's title by survivorship, which could not accrue till the instant of her husband's death." (Parentheses added). Chitty's Blackstone, 19th London Ed., Book IV, p. 190. The New Jersey court explained the matter in this manner: "That the forfeiture of estates for crimes against the state was abolished by the first Constitution in 1776, and is still abolished, does not affect the criminal character of the offenses to which the nonforfeiture applies. Suicide is none the less criminal because no punishment can be inflicted. It may not be indictable because the dead cannot be indicted. If one kills another, and then kills himself, is he any less a murderer because he cannot be punished?" *State v. Carney, supra.* If a party, after committing a criminal offense and after being indicted therefor, dies before trial, the action abates, but this is not tantamount to acquittal.

For the reason that a suicide may not be punished, it is argued that this common law offense is now obsolete and serves no practical purpose for the protection of society. We do not agree. Since suicide is a crime, one who aids and abets another in, or is accessory before the fact to, self-murder is amenable to the law. *Commonwealth v. Bowen,* 13 Mass. 356 (1816). Likewise, where two agree to kill themselves together and the means employed takes effect upon one only. *McMahan v. State,* 53 So. 89 (Ala. 1910); *Turner v. State,* 108 S.W. 1139 (Tenn. 1908). Also, where one in attempting to commit suicide accidently kills another. *State v. Levelle, supra.* Such offenses, in the absence of statute to the contrary, would not be criminal offenses in a jurisdiction in which suicide is not a crime. *Grace v. State, supra.*

"An attempt to commit a crime is an indictable offense, and as a matter of form and on proper evidence, in this jurisdiction, a conviction may be sustained on a bill of indictment making the specific charge, or one which charges a completed offense. G.S. 15-170. . . ." *State v. Parker,* 224 N.C. 524, 525, 31 S.E. 2d 531; *State v. Batson,* 220 N.C. 411, 17 S.E. 2d 511.

At common law attempted suicide was a misdemeanor, punishable by fine and imprisonment. 10 Halsbury's Laws of England, 3d Ed., s. 1396, p. 728; 1 Brill: Cyclopedia Criminal Law, s. 149, p. 282; *Regina v. Doody,* 6 Cox C. C. 463 (1854); *Regina v. Burgess,* 9 Cox C. C. 247 (1862).

It is also asserted "that a person who commits suicide is abnormal mentally" and "fails to distinguish the fine points of what is right and what is wrong." It is often said that all persons who commit crime are

mentally abnormal. This line of argument is not new, it·was in vogue 200 years ago. Blackstone discusses this point: ". . . this excuse ought not to be strained to that length to which our coroner's juries are apt to carry it, *viz.* that the very act of suicide is an evidence of insanity; as if every man, who acts contrary to reason, had no reason at all: for the same argument would prove every other criminal *non compos* as well as the self-murderer." Chitty's Blackstone, 19th London Ed., Book IV, p. 189.

An insane person is incapable of ·committing this or any other offense. The defense of insanity is available to all defendants in all criminal trials. "The test of mental responsibility is the capacity of defendant to distinguish between right and wrong at the time and in respect to the matter under investigation." 1 Strong's Index, Criminal Law, s. 5, p. 683, and cases there cited.

An attempt to commit suicide is an indictable misdemeanor in North Carolina. "All misdemeanors, where a specific punishment is not prescribed shall be punished as misdemeanors at common law," that is, by fine or imprisonment in the county jail, or both. G.S. 14-3; *State v. Powell,* 94 N.C. 920; *State v. McNeill,* 75 N.C. 15. This, of course, does not mean that the court may not place offenders on probation, or make use of other state facilities and services in proper cases.

The judgment of the court below, quashing the bill of indictment, is Reversed.